In re Guardianship of Burger.

(No. 3120—Decided May 18, 1967.)

*Mr. William B. Saxbe,* attorney general, and *Mr. David E. Morgan,* for appellant Department of Mental Hygiene and Correction.

*Mr. William D. Dorfmeier,* for Pearl Butts, guardian.

SHERER, J. The state of Ohio, Department of Mental Hygiene and Correction, Bureau of Support, obtained a judgment for ten thousand one hundred eleven and 50/100 dollars ($10,111.50) in the Court of Common Pleas of Montgomery County against Pearl Butts as guardian of Phoebe Burger, an incompetent without dependents, for the ward's care and support in a state benevolent institution. Such guardian holds an estate of her ward in excess of $1,400. The state of Ohio filed an application in the Probate Court of Montgomery County, praying an order to the guardian to disburse the corpus or estate to satisfy the judgment.

Counsel submitted the case to that court on an agreed statement of facts, agreeing also by stipulation that the sole question of law involved might be stated as follows:

"Does Revised Code 5121.04 (B) (1) require the guardian to apply the corpus of the guardianship estate toward the satisfaction of the judgment debt or does it require the guardian to maintain said fund for the ward's personal use?"

The Probate Court in its judgment held that such corpus should not be applied toward the satisfaction of such judgment debt but should be maintained to provide an income for the ward in an amount not in excess of $25 per month. The matter is now before us on appeal from the judgment as being contrary to the provisions of division (B) (1) of Section 5121.04, Revised Code.

Prior to its amendment effective January 1, 1962, Section 5121.04, Revised Code, read as follows:

"The Department of Mental Hygiene and Correction shall investigate the financial condition of the inmates of benevolent institutions under its control and of the relatives liable for the support of such inmates, in order to determine the ability of any inmate or such relatives to make payment in whole or in part for the support of the inmate and to provide suitable clothing as required by the superintendent of the institution. In all cases due regard shall be had for others who may be dependent for support upon such relatives or the estate of the inmate."

This statute was extensively amended, effective January 1, 1962 (setting out somewhat more detailed provisions as to the liability of inmates of state benevolent institutions who have no dependents, provisions which are not here applicable), and, again, effective October 10, 1963. In the latter version, applicable here, we find that division (B) (1) of this section was enacted as follows:

"(1) A patient without dependents shall be liable for the full per capita cost. A patient without dependents who has a gross annual income of two thousand dollars or more, regardless of the source of such income, shall pay currently the full amount of the per capita cost; if his gross annual income is less than two thousand dollars, not more than twenty-five dollars per month shall be kept for personal use by or on behalf of the patient and the balance shall be paid currently on his support. The estate of a patient without dependents shall pay any remaining difference between the per capita cost and the amounts prescribed in this section, or shall execute an agreement with the department for payment to be made at some future date under terms suitable to the department."

In the earlier version of the statute quoted above the department was given wide discretion to determine ability to pay for a patient's support in a state institution not only on the patient's part but on the part of his relatives liable for such support. The only admonition added was that "due regard shall be had for others who may be dependent for support upon such relatives or the estate of the inmate."

This admonition, as to inmates having an estate in the custody of a guardian and having no dependents, would ordinarily impel the department to assert full liability against such estate

for such an inmate's support, but it was not clearly compelled to do so.

The initial sentence in division (B) (1) of this section as it now exists, and applicable to the instant case, clarifies this point beyond argument, plainly providing that such a patient "shall be liable for the full per capita cost."

It is true that the statute goes on to provide alternative *methods of meeting that obligation from income* in varying situations, but this in no respect amounts to a limitation on the full *liability* just mentioned.

As to *methods* of meeting such liability it is provided in this section that, if the patient's gross income equals $2,000 annually, his estate is required to pay "currently" the full amount of the per capita cost, the implication being that all or the major portion thereof is to be paid from such income.

In passing, we note that an annual income of $2,000 capitalized at 5 per cent would indicate an estate of $40,000 in situations where the sole source of income is derived from the patient's estate.

The statutory use of the expression "income * * * regardless of the source of such income" clearly indicates a legislative intent to reach income from sources other than the patient's estate, *i. e.*, sources as to which the state could not reach the corpus which produces it. Some examples of these are public and private pension plans, annuities and income from trust estates.

The statute then goes on to the second alternative method of payment *from income*. If the patient's gross income is less than $2,000 annually, only that portion thereof in excess of $25 monthly is to be currently applied in payment.

Having thus provided for two alternative methods of payment from *income*, it is next provided in this section that the "estate" of a patient without dependents shall pay any "remaining difference" between payments from incomes and the "per capita cost," or "shall execute an agreement with the department for payment to be made at some future date under terms suitable to the department."

It is inconceivable that the General Assembly, in the enactment of this final provision for payment of such "remaining

difference'' did not appreciate the clear possibility that it would operate in such a way, as to income solely from a very small estate, as to consume the source of that income entirely, thereby leaving the patient with no income at all. Having this possibility in mind and there having been made no provision, either express or implied, indicative of an intent to preserve the corpus of such an estate so as to continue to produce income in any amount, we must conclude that it was the legislative intent not to do so.

We consider the statute to be clear beyond argument. First, it is clearly provided that patients in this category ''shall be liable for the full per capita cost.''

It is thereafter plainly provided that after certain portions of this ''full per capita cost'' have been paid from income, the ''remaining difference'' shall be paid by the patient's estate as therein provided. With statutory language of this clarity there is no room for judicial interpretation otherwise than according to its plain meaning, and we attempt none. *Slingluff* v. *Weaver,* 66 Ohio St. 621.

The Probate Court erred in its judgment denying the application of the state for an order directing the guardian to disburse the corpus of the patient's estate to satisfy *pro tanto* the final judgment of the state against that estate, and the judgment must be reversed.

If there was a right in the patient here to a preservation of the corpus of her estate or the postponement of the collection of such ''remaining difference'' by reason of an ''agreement'' mentioned in the section, or otherwise, such right has been lost by failure to establish it in the Common Pleas Court.

We know of no jurisdictional power possessed by the Probate Court which authorizes it to nullify, or to delay execution on, a final judgment against the estate of a ward obtained, as here, in the Common Pleas Court. The only discretion to defer payment apparent to us rests with the department.

In conclusion, we voice our regret that, in this case involving solely questions of statutory interpretation, the briefs of the Attorney General, counsel for appellant, instead of being limited to those questions in a proper professional manner, should so freely attribute prejudice to the court below in rendering the

judgment it did. Although we disagree with it we are sure that that judgment was rendered in good faith and according to the court's honest understanding of the law.

The judgment of the Probate Court will be reversed and, there being no dispute as to the facts in this case, this court will proceed to render the judgment the Probate Court should have rendered and will order Pearl Butts as guardian of the estate of Phoebe Burger, an incompetent, to disburse moneys in her custody as such guardian toward the satisfaction of the judgment of the state of Ohio, Department of Mental Hygiene and Correction.

CRAWFORD, P. J., and KERNS, J., concur.

*Judgment accordingly.*